## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEON J. HOWARD,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-0633** |
| | : | |
| **DEPARTMENT OF** | : | |
| **CORRECTIONS**, *et al.* | : | |
| **Defendants.** | : | |

## MEMORANDUM

**SCHMEHL, J.  /s/ JLS**                                                 **MAY 9, 2024**

Plaintiff Leon J. Howard, a prisoner incarcerated at SCI Phoenix, brings this *pro se* civil action, alleging claims of deliberate indifference and violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"), with respect an extended bed accommodation.  (Compl. (ECF No. 2).)  Howard has filed a Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1) and Prisoner Trust Fund Account Statement (ECF No. 4).  He has also filed motions seeking a preliminary injunction and the appointment of counsel.  (ECF Nos. 3, 6.)  Because it appears that Howard cannot afford to pre-pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*.  For the following reasons, the Court will dismiss Howard's Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and deny his motions for preliminary injunction and for the appointment of counsel.

## I.     FACTUAL ALLEGATIONS[1]

Howard's Complaint raises claims pursuant to 42 U.S.C. § 1983, the ADA, the RA, and a "supplemental state-law negligence claim related to Defendants deliberate indifference which

---

[1] The following allegations are taken from the Complaint.  The Court adopts the pagination supplied by the CM/ECF docketing system.

rise[s] to cruel and unusual treatment [and] wanton infliction of pain." (Compl. at 1-2, 5-6.)
Howard names as Defendants the Pennsylvania Department of Corrections ("DOC") and its
employees, Jamie Sorber (identified in the Complaint as the Superintendent of SCI Phoenix),
Mandy Sipple (identified as the Deputy of Centralized Services), and Brittany Huner (identified
as the Chief Health Care Administrator). (*Id.* at 2-3.) The individual Defendants are named in
their official and individual capacities. (*Id.*)

Howard avers that he requested and was "ADA approved" for an extended bed on August
23, 2022, which he asserts was to accommodate his diagnosis of degenerative disc disease[2] and
his height,[3] which is six feet and seven inches. (*Id.* at 3.) Howard alleges that the "ADA
accommodation" is "suppose[d] to consist" of a bed that is seven feet long and three feet wide,
with a mattress that is eight to twelve inches thick. (*Id.*) He contends that the accommodation
also includes a "single occupant-cell status (medical z-code)." (*Id.*)

Howard asserts that Defendant Sipple was responsible for having his bed built and
installed in accordance with the foregoing accommodations. (*Id.*) Howard acknowledges that he
received an accommodation, but he contends that Sipple deviated from the "standard
accommodation" and altered his bed into a bunkbed resulting in him having "to constantly sit
hunched-over." (*Id.* at 3.) He further avers that he has to "constantly bend-over in order to get in
and out of bed to avoid hitting his head, neck or back on the top bunk-bed." (*Id.* at 3-4.)

---

[2] Howard alleges that he was diagnosed with degenerative disc disease more than twenty-five
years ago and now requires surgery to relieve the chronic pain in his lower back. (Compl. at 3.)
He also avers that a March 16, 2021 MRI depicted degenerative disc disease on "multi levels of
his lower spine" with herniated and bulging discs as well as nerve impingement. (*Id.*)

[3] Howard allegedly requested the extended bed "so that his feet/ankles wouldn't hang over the
end of the bed causing numbness, swelling and edema." (Compl. at 3.)

On September 13, 2022, Howard wrote to Sipple regarding her alleged deviation from the "standard accommodation," but his request was denied.  (*Id.* at 4.)  On September 22, 2022, Howard allegedly wrote to Tammy Ferguson, the Deputy Secretary of the DOC, requesting that he be provided with the standard accommodation that had been provided to other inmates.  (*Id.*)  He received a response on October 11, 2022 advising him to address his concerns to Defendant Huner.  (*Id.*)  On September 27, 2022, Howard wrote to Defendant Sorber requesting that he be provided with the standard accommodation.  (*Id.*)  Howard's request was allegedly forwarded to Sipple for a response, and it was again denied.  (*Id.*)

Howard filed a grievance on October 7, 2022 concerning "Sipple's violation of his ADA accommodation [and] DOC's policy concerning ADA accommodations."  (*Id.*)  Howard also expressed in his grievance that he received a "serious right shoulder injury" when he hit the top bunk of his bed.  (*Id.*)  On November 28, 2022, Howard wrote to Defendant Huner who allegedly responded by telling him to "apply for a Z-code," but when Howard applied for the "Z-code," he was denied.  (*Id.* at 5.)  On December 23, 2022, Howard filed a grievance against Huner for failing to provide him with the "appropriate accommodation" that had been provided to prior inmates.  (*Id.*)

Howard asserts that the Defendants' actions have caused him to "unnecessarily suffer serious back pain," mental and emotional distress, anxiety, and the loss of enjoyment of life.  (*Id.* at 6.)  He seeks unspecified injunctive relief and monetary damages.  (*Id.* at 7.)

## II.     STANDARD OF REVIEW

The Court will grant Howard leave to proceed *in forma pauperis* because it appears he is not able to pre-pay the fees to commence this civil action.[4]  Because Howard is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted), *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

"'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Howard is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*

---

[4] However, as Howard is currently incarcerated, he will be obligated to pay the full amount of the filing fee in installments as required by the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "'cannot flout procedural rules — they must abide by the same rules that apply to all other litigants.'" *Id.*

## III.   DISCUSSION

### A.  Section 1983 Claims

Howard asserts that the Defendants have violated his Eighth and Fourteenth Amendment rights by refusing to provide him with "reasonable and equal ADA accommodations for his spinal condition." (Compl. at 5-6.)  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  For the following reasons, the Complaint fails to state a § 1983 claim as pled.

#### 1.  Claims Against the DOC and Official Capacity Claims

Howard asserts constitutional claims against the DOC and each individual Defendant – all alleged to be employees of the Commonwealth of Pennsylvania – in his or her official and individual capacities.  The Eleventh Amendment bars suits against the Commonwealth and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against Commonwealth officials, like all of the Defendants in this case, acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502

U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as its officials sued in their official capacities, are immune from suits filed in federal court.  Accordingly, Howard's claims against the DOC and the official capacity claims are dismissed with prejudice.

### 2.  Individual Capacity Claims

Howard's constitutional claims are best construed as medical deliberate indifference claims.  He contends that he should have been provided with a "single occupant-cell status (medical z-code)" and a "bed that is seven feet long and three feet wide, with a mattress that is eight to twelve inches thick."  (Compl. at 3.)  Instead, Howard asserts he was provided with a bunkbed requiring him to "bend-over in order to get in and out of bed."  (*Id.* at 3-4.)  Howard allegedly wrote to Defendants Sipple, Huner, and Sorber, requesting that he be provided with a different bed accommodation, to no avail.[5]  (*Id.* at 4.)  Howard also filed grievances on October 7, 2022 and December 23, 2022 concerning the lack of an "appropriate [bed] accommodation." (*Id.* at 5.)

To state a constitutional claim in this context, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment

---

[5] Howard provides no further allegations as to the content of his letters.

but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

Howard's deliberate indifference claims are insufficiently developed to be plausible. Specifically, Howard has failed to allege that the failure to provide him with a different bed accommodation posed an excessive risk to his health or safety. *See Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (dismissing deliberate-indifference claim based on failure to provide therapeutic mattress because plaintiff did not allege how resulting back pain posed excessive risk to his health and safety); *Kinsey v. Bloomberg*, No. 12-8936, 2014 WL 630670, at *5 (S.D.N.Y. Feb. 18, 2014) (plaintiff "failed to allege with particularity that the failure to provide longer beds poses an excessive risk to [his] health"); *Dudley v. Streeval*, No. 20-5291, 2021 WL 1054390, at *5 (6th Cir. Feb. 8, 2021) (prisoner failed to point to any evidence to show that the doctor's failure to provide comfort-based items for his degenerative disc disease and scoliosis, such as a bed wedge, extra pillow, or a new mattress, was due to a deliberate disregard

of a risk to his health); *Patterson v. Ponte*, No. 16-3156, 2017 WL 1194489, at *6 (S.D.N.Y. Mar. 30, 2017), *report and recommendation adopted*, No. 16-3156, 2017 WL 1405753 (S.D.N.Y. Apr. 17, 2017) (dismissing claim alleging that plaintiff's mattress "cause[d] extreme hip, back, and leg pain" because "[t]hese naked assertions fail to provide the factual detail necessary to allege plausibly that [Plaintiff] suffered the injuries as a result of the bed") (citation and internal quotation marks omitted).  Howard does not provide any specific details to demonstrate how the failure to provide him with his desired bed accommodation exacerbated an injury or caused a new and significant injury.  In short, Howard has not pled sufficient facts to show that any Defendant was aware that serious harm could result from failing to provide him with the specific bed accommodation he believed he was entitled to receive.

Importantly, Howard was indeed provided with some type of bed  accommodation in response to his request.  It is unclear from the Complaint as to the exact bed accommodation Howard received, and he fails to explain how that accommodation failed to address his medical needs.  Nevertheless, Howard's disagreement about the type of accommodation he believes he should have received, does not create a constitutional claim.  *See, e.g., White v. Hayden*, No. 19-113, 2020 WL 6482984, at *5 (E.D. Tex. Aug. 20, 2020), *report and recommendation adopted*, No. 19-113, 2020 WL 5670087 (E.D. Tex. Sept. 24, 2020) (prisoner's disagreement with treatment decision, and his subjective belief that he required a medical mattress, did not demonstrate deliberate indifferent to his serious medical needs); *Frazier v. Keith*, 707 F.App'x 823, 824 (5th Cir. 2018) (*per curiam*) (failure to provide an air mattress prescribed by an outside doctor to alleviate bedsores was not deliberate indifference where plaintiff received treatment for bedsores and related medical issues); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (noting that neither dissatisfaction with treatment nor allegations of negligent malpractice state

claim for deliberate indifference).  The fact that Howard was provided with an accommodation belies his claim of deliberate indifference.

### B.  Claims Under the Americans with Disabilities Act and the Rehabilitation Act

Howard asserts that he is a "person with a qualified disability" who was "ADA approved for an extended bed accommodation."  (Compl. at 5-6.)  He further asserts that the Defendants' refusal to provide him with the "standard extended bed accommodation" has caused him to suffer exacerbated pain in his lower back for more than seventeen months.  (*Id.* at 6.)

 "Both the ADA and the RA require public entities, including state prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities."  *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019). "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, i.e., the general prohibition against discrimination, is materially the same."  *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (internal quotations, citations, and alterations omitted).

The proper defendant for a Title II ADA or an RA claim is the public entity or an individual who controls or directs the functioning of the public entity, which in this case, is the DOC.[6]  *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).  Accordingly, to the

---

[6] Neither Title II of the ADA nor the RA provide for individual liability.  *See Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."); *A.W. v. Jersey City Pub.*

extent that Howard seeks to assert any ADA or RA claims against Sorber, Sipple, or Huner, those claims will be dismissed with prejudice.[7]

To state a claim under either the ADA or the RA against the DOC, Howard "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89 (footnote omitted). "[A] plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA. . . . To make out such a claim, a plaintiff must show that the accommodation he seeks is reasonable, *i.e.*, that it is 'necessary to avoid discrimination on the basis of disability.'" *Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa.*, 483 F. App'x 759, 763 (3d Cir. 2012) (quoting 28 C.F.R. § 35.130(b)(7))(internal citations omitted).

Howard "must also show intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages." *Furgess*, 933 F.3d at 289 (footnote omitted). A plaintiff may meet that standard in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that she could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support

---

*Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").

[7] Any ADA and RA claims asserted against the individually named DOC Defendants in their official capacities will also be dismissed with prejudice as duplicative of the claim against the DOC. *See Robinson v. Pennsylvania Dep't of Corr.*, No. 20-2978, 2022 WL 970760, at *4 (E.D. Pa. Mar. 31, 2022) (dismissing official capacity ADA claims against individual defendants as "duplicative" to claims against the DOC); *Dews v. Link*, No. 18-4285, 2021 WL 2223795, at *3 (E.D. Pa. June 2, 2021) ("[W]here the plaintiff simultaneously sues the state entity that employs the individual defendants, the claims against the individuals may be dismissed as duplicative of the claims against the state.").

finding deliberate indifference." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (internal quotations and alterations omitted).

To allege that he is a "qualified individual with a disability," Howard must assert that he has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ." 42 U.S.C. § 12102(1)(A).[8] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. at § 12101(2)(A). The 2008 ADA Amendments Act clarified that the definition of disability and "substantially limits" should be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted." 42 U.S.C. § 12102(4)(A)-(B).

As noted above, Howard alleges that he suffers from chronic lower back pain and has been diagnosed with degenerative disc disease. (Compl. at 3.) He also avers that a 2021 MRI of his lower spine depicted nerve impingement and herniated discs. (*Id.*) Although Howard asserts that he suffers from a physical disability, he does not include factual allegations in his Complaint describing how his alleged disability limits him in a major life activity, as required to state plausible ADA and RA claims.

The Court also concludes that Howard has not sufficiently pled that he was excluded from the benefits of a public entity's services, programs, or activities *because of* a disability.[9]

---

[8] Due to the "parallel definitions of disability" between the ADA and the RA, Court's use them interchangeably. *See e.g.*, *Marshall v. Sisters of Holy Fam. of Nazareth*, 399 F. Supp. 2d 597, 607 (E.D. Pa. 2005) (quoting *McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)).

[9] It appears that a prison's provision of beds to inmates fits within the definition of a service, program, or activity. The Department of Justice guidance on Title II regulations "explains that

The Court understands Howard to be asserting that the DOC failed to accommodate his disability by refusing to provide him with the "standard accommodation" that had been provided to other inmates. (Compl. at 3.) Howard contends the bed he instead received was altered into a bunkbed resulting in him having "to constantly sit hunched-over" and requiring him to bend over in order to get in and out of bed. (*Id.*) However, he fails to specifically explain how the accommodation he was received was unreasonable, *i.e.*, he hasn't specifically detailed how the bed he received was insufficient to accommodate his alleged disability.

Additionally, to the extent Howard rests his ADA and RA claims on any alleged denial or inadequacy of medical treatment, "decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Nunez v. Prime Care Health, Inc.*, No. 19-0859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) (citing cases); *see also Kokinda*, 663 F. App'x at 159 ("The District Court was also correct to conclude . . . that Kokinda's ADA claims fail because the ADA prohibits disability-based discrimination, not inadequate treatment for the disability." (footnotes and internal quotations omitted)). In sum, the Court will dismiss Howard's ADA and RA claims because nothing in his Complaint supports a plausible basis for a claim under either statute.

### C.  State Law Claims for Negligence

Howard also asserts negligence claims. The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

---

corrections systems are unique facilities under Title II because inmates cannot leave, and thus prisons must address the needs of inmates with disabilities by providing 'accessible toilet and shower facilities, devices such as a bed transfer or a shower chair, and assistance with hygiene methods for prisoners with physical disabilities.'" Furgess, 933 F.3d 285, 290 (3d Cir. 2019).

costs, and is between . . . citizens of different States."[10]  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  Since the Complaint is silent on the citizenship of the parties, Howard has not met his burden for establishing a basis for diversity jurisdiction over any state claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Howard leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  The following claims will be dismissed with prejudice:  (1) all § 1983 claims against the DOC; and (2) the official capacity claims, except those for injunctive relief, and the ADA and RA claims asserted against the individual DOC Defendants, Sorber, Sipple, and Huner.  Howard's § 1983 claims for deliberate indifference against the DOC Defendants and his ADA and RA claims against the DOC are dismissed without prejudice.  Howard's state law claims are dismissed without prejudice for lack

---

[10] Because the Court has dismissed Howard's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

of subject matter jurisdiction.  The Court will grant Howard leave to amend as to the claims

dismissed without prejudice so he can "flesh out [his] allegations by . . . explaining in an

amended complaint the 'who, what, where, when and why' of [his] claim."  *See Gambrell v. S.*

*Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).

Howard's Motion for Appointment of Counsel is denied.  *See Tabron v. Grace*, 6 F.3d

147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court

should first determine whether plaintiff's lawsuit has a legal basis).  His Motion for Preliminary

Injunction will also be denied because he is not likely to succeed on the merits of his civil rights

claims.  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary

injunction must establish that he is likely to succeed on the merits, that he is likely to suffer

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

and that an injunction is in the public interest.").

An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**


**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**